IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


LARRY TATE,

          Plaintiff,                     CV F 04 6604 OWW WMW PC

    vs.                               FINDINGS AND RECOMMENDATION


JEANNE WOODFORD, et al.,

          Defendants.



     Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).   Pending before the Court is the June 20, 2008, second amended complaint.

     In an earlier order dismissing the original complaint, the Court noted the following. Plaintiff, an inmate in the custody of the California Department of Corrections at Pleasant Valley State Prison, brings this civil rights action against defendant correctional officials for conduct that occurred while Plaintiff was housed at Corcoran State Prison (CSP) and Pleasant Valley State Prison (PVSP).   Plaintiff names the following individual defendants: James Yates, Warden at PVSP; Michael Bendon, Chief Medical Officer at PVSP; K. Nicholes, Staff Physician at PVSP; S. Raman, Physician at CSP; A. Loaiza, Physician at CSP;   D. Sylvester, Appeals Coordinator at PVSP; C. Rodriguez, Correctional Lieutenant at CSP.

     The allegations of the complaint stem from Plaintiff's medical treatment.   In November

of 2003, Plaintiff was transported to an outside medical facility for treatment.   Plaintiff was diagnosed with Valley Fever, a form of pneumonia.   Upon discharge from the outside hospital, Plaintiff was transported to the CSP Corcoran Acute Care Hospital.   Plaintiff was placed in administrative isolation.

Plaintiff was eventually discharged from the Acute Care Hospital.   Plaintiff filed an application "for inclusion of the benefits of the services, programs and activities of the department, . . . .by and under the Americans With Disabilities Act."   Defendant Sylvester denied the application on the grounds that the application contained "too much verbiage" and the activities "did not appear to be an ADA issue."

Plaintiff re-submitted his application, along with a memorandum "to which re-assert ADA qualification."  Plaintiff alleges that "to date, defendants Yates, Bendon, and Sylvester is yet to ensure plaintiff's mandatory personal interview of all claims made ripe by the evidence in this complaint."

Plaintiff files this complaint pursuant to 42 U.S.C. § 1983.  Plaintiff also claims a violation of the Americans With Disabilities Act, 42 U.S.C. § 12132.[1]

Section 1983 claims

To warrant relief under the Civil Rights Act, a plaintiff must allege and show that defendant's acts or omissions caused the deprivation of his constitutionally protected rights.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993).    In order to state a claim under § 1983, a plaintiff must allege that: (1) a person was acting under color of state law at the time the complained of act was committed; and (2) that person's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  Paratt v.Taylor, 451 U.S. 527, 535 (1981).

The statute plainly requires that there be an actual connection or link between the actions

---

[1] In the first amended complaint, Plaintiff abandons his ADA claims.

of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Under the Eighth Amendment, the government has an obligation to provide medical care to those who are incarcerated.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  "In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'"  Id.  (quoting Estelle v. Gamble, 429 U.S. 97. 104 (1976)).  Lopez takes a two-prong approach to evaluating whether medical care, or lack thereof, rises to the level of "deliberate indifference."  First, a court must examine whether the plaintiff's medical needs were serious.  See Id.  Second, a court must determine whether "officials intentionally interfered with [the plaintiff's] medical treatment."  Id. at 1132.

In the order dismissing the original complaint, Plaintiff failed to charge any of the named defendants with conduct that amounted to deliberate indifference.  In order to state a claim, Plaintiff must allege specific facts indicating that each named Defendant knew of and disregarded a serious risk to Plaintiff's health, resulting in injury to Plaintiff.

In the first amended complaint, Plaintiff alleged that "he truly believes" that officials had knowledge of his condition.  Plaintiff alleged that "it is believable" that the Director of the California Department of Corrections and Rehabilitation knew of "the rise of this disease in massive numbers."

Plaintiff alleged that the Chief Medical Officer, Dr. Bendon, "should have known of this

1    sickness and all the counter action, which should have been arbitrated through the medical

2    department, therefore, I would not have been retained in PVSP's hospital by Dr. Nicholes, for 2

3    days, to allow me to become worse, possibly more endangered, before sending me to the outside

4    hospital." Am. Compl., p. 8.

5          Plaintiff alleged that when he was transferred to CSP Corcoran and placed in the prison

6    hospital, he was seen by Dr. Ramen and A. Loaiza, "whom both confirmed to me that they had

7    read the hospital (Mercy) discharge papers and that I wasn't supposed to get amphotericin B any

8    longer, which may have something to do with the lung mass I'm having today, for not being

9    given the proper medicine for its' length of time." Am. Compl., p. 9.

10         In the order dismissing the first amended complaint, Plaintiff was advised that he may not

11   level conclusory allegations against Defendants.  Plaintiff must allege facts indicating that each

12   defendant knew of and disregarded a serious risk to Plaintiff's health, resulting injury to Plaintiff.

13   In the first amended complaint, the only specific conduct charged to any of the Defendants is that

14   Defendants Ramen and Loaiza were aware that Plaintiff was not supposed to be prescribed

15   amphotericin B any longer.  There is no other conduct charged to these Defendants.

16         As to Plaintiff's claims that prison officials should have known of Plaintiff's condition

17   based upon "counter actions," liability may be imposed on supervisory defendants  under § 1983

18   only if (1) the supervisor personally participated in the deprivation of constitutional rights or (2)

19   the supervisor knew of the violations and failed to act to prevent them.  Hansen v. Black, 885

20   F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff does

21   not allege any facts indicating that any of the named Defendants participated in, or knew of and

22   failed to prevent, the alleged wrongs.

23         Because Plaintiff failed to cure the deficiencies identified in the order dismissing the

24   original complaint, the first amended complaint was  dismissed.  The June 20, 2008, second

25   amended complaint is filed in response to the order dismissing the first amended complaint.

26

In the second amended complaint, Plaintiff names as defendants Jeanne Woodford, former Director of the California Department of Corrections and Rehabilitation.  Plaintiff alos names Warden Yates, Dr. Benton and Dr. Nichols.

In the second amended complaint, Plaintiff restates generally the allegations of the first amended complaint.  Plaintiff's central claim is that when he was sent to Pleasant Valley State Prison, he should have been warned of the danger.  Plaintiff specifically alleges that Warden Yates "did not place a caution on medical intake, or a warning, therefore being just as responsible for me (Tate) contracting this deadly virus."  Plaintiff alleges that Dr. Benton did not advise Dr. Nichols to send Plaintiff to a "more adequate" facility.

More specifically, Plaintiff alleges that after five months as Pleasant Valley, he became ill.  When Plaintiff was first seen by Dr. Nichols, he was referred to the Chief Medical Officer, Dr. Benton.  Plaintiff was admitted to the prison hospital.  The next day, Dr. Benton referred Plaintiff to Mercy Hospital in Bakersfield, where he was hospitalized for 21 days.  Plaintiff alleges that when he was returned, "there were problems getting ordered medicines."  Plaintiff alleges no other conduct as to any of the named defendants.

The second amended complaint suffers from the same defects as the original complaint and first amended complaint.  Plaintiff has failed to allege facts to support his conclusion that the defendants in this action knew of the harm to Plaintiff, and acted with disregard to that harm.  That Plaintiff contracted Valley Fever does not subject defendants to liability.  In the second amended complaint, the only conduct charged to Dr. Nichols and Dr. Benton is that they treated Plaintiff, referring him to an outside hospital for treatment.  There are no facts alleged that support a claim of deliberate indifference against these defendants.

As to Warden Yates and former Director Woodford, Plaintiff has failed to allege any facts indicating that either of them knew of the harm to Plaintiff.  As noted, Plaintiff has been advised that such defendants can not be held liable on a theory of supervisory liability.

1    Plaintiff has twice been granted an opportunity to allege facts indicating that defendants

2    knew of and disregarded a serious risk to Plaintiff's health or safety.  Plaintiff has failed to do so.

3    Because Plaintiff has failed to correct the deficiencies identified in earlier orders, the court

4    recommends dismissal of the claims for failure to state a federal claim upon which the court

5    could grant relief.  See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987) (prisoner must be

6    given notice of deficiencies and opportunity to amend prior to dismissing for failure to state a

7    claim).

8    Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for

9    failure to state a claim upon which relief can be granted.

10   These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B).  Within

12   twenty days after being served with these findings and recommendations, plaintiff may file

13   written objections with the court.  Such a document should be captioned "Objections to

14   Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

15   objections within the specified time waives all objections to the judge's findings of fact.  See

16   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the

17   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

18   F.2d 1153 (9th Cir. 1991).

19

20   IT IS SO ORDERED.

21   **Dated:    June 30, 2008**                          **/s/  William M. Wunderlich**
                                                     UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

6